UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
**Honorable A. Bruce Campbell**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ELIZABETH SCOTT PATERSON, | ) | Case No. 10-35734 ABC |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| MARLENE BIZUB, | ) | Adversary No. 11-1013 ABC |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ELIZABETH SCOTT PATERSON, | ) | |
| Defendant. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on the Cross Motions for Summary Judgment filed by Plaintiff/Creditor Marlene Bizub ("Creditor") and Defendant/Debtor Elizabeth Paterson ("Debtor") and the Responses thereto filed by Creditor and Debtor. The Court, having considered the foregoing and the file in this matter, and being otherwise advised in the premises, finds as follows.

**BACKGROUND**

Creditor was an unlicensed psychotherapist practicing in the Colorado Springs area. She was involved in rendering expert services in domestic relations cases. Debtor is or was also a psychologist in the Colorado Springs area and provided similar services. Approximately ten years ago, Debtor began publicly challenging Creditor's academic qualifications, competence, and integrity. Debtor filed numerous complaints and grievances against Creditor on these bases. In 2007, Creditor sued Debtor in the District Court for El Paso County, Colorado ("State Court"), for defamation, malicious prosecution, extreme and outrageous conduct, and related claims. The litigation culminated in an April, 2008 judgment in favor of Creditor and against Debtor in excess of $1.4 million, including $970,000 in punitive damages.

Debtor filed a Chapter 7 bankruptcy petition on October 8, 2010. Creditor filed this adversary proceeding for a determination that the debt represented by her judgment against Debtor is nondischargeable under 11 U.S.C. § 523(a)(6) as a willful and malicious injury. At the Court's invitation, the parties' motions for summary judgment address the question of whether the doctrine of collateral estoppel precludes Debtor from relitigating the issue of whether she willfully and maliciously injured Creditor such that Creditor is entitled to a judgment of nondischargeability in this adversary proceeding as a matter of law.

## PROCEEDINGS AND FINDINGS IN STATE COURT

The certified copies of pleadings and transcripts submitted by Creditor in support of her motion for summary judgment establish that the following proceedings occurred in the state court litigation and that the State Court made findings of fact as indicated.

### A. The State Court Litigation

1. The prior litigation between Creditor and Debtor was styled Marlene Bizub v. Elizabeth S. Paterson, District Court, El Paso County, Colorado, Case No. 07CV1960 (the State Court Action). (Complaint in Case No. 07CV1960, Exhibit 1 to Creditor's Motion for Summary Judgment.) (Exhibits to Creditor's Motion for Summary Judgment are hereinafter cited as "Cr.Ex.")

2. Trial proceeded on the basis of Creditor's Third Supplemental Complaint ("the Complaint"), a certified copy of which is Cr.Ex. 4. (Creditor's Motion for Summary Judgment, ¶ 75 and Debtor's Response, ¶ XI. 1.)

3. The Complaint contained the following claims for relief: (1) defamation per quod; (2) defamation per se; (3) interference with contract; (4) eight separate claims of malicious prosecution; (5) negligent infliction of emotional distress; (6) invasion of privacy by intrusion; (7) intentional interference with prospective advantage; (8) extreme and outrageous conduct; (9) exemplary or punitive damages; and (10) permanent injunction. (Cr.Ex. 4.)

4. The Trial Management Order entered by the State Court contained the same claims as the Complaint. (Cr.Ex. 7.)

5. On April 3, 2008, the State Court entered an Order Re: Pending Discovery Issues ("Discovery Order"). (Cr.Ex. 6.) The Discovery Order recited that Debtor had three times been ordered to produce a detailed privilege log to enable Creditor and the State Court to evaluate her claims of therapist/client privilege which Debtor had invoked to justify her failure to produce information and documents requested by Creditor. The Discovery Order noted that Debtor had failed and refused to comply with her discovery obligations and the three prior orders to provide a privilege log, and that the failures and refusals were

> knowing and intentional on the part of both [Debtor] and counsel. They are not attributable (sic) mere nonfeasance. The discovery disputes have not been pursued in good faith by the [Debtor and counsel] and have caused the diversion of substantial resources. The [Debtor and counsel's] actions on discovery generally and on the privilege claims specifically have been frivolous, lacked substantial justification, and appear to the Court to have been pursued for purposes of multiplying the litigation needlessly and to obstruct and harass [Creditor].

(Cr.Ex. 6, p. 3-4.)

6. The Discovery Order awarded Creditor attorneys fees related to the discovery disputes in the amount of $6,202.00 and provided that if the funds were not paid to Creditor by 5:00 p.m. on April 7, 2008, "judgment will enter as to liability on [Creditor's] claims for relief as well as [Debtor's] counterclaims and trial will be limited to quantifying damages on the [Creditor's] claims." (Cr.Ex.6, p. 4.)

7. Debtor did not timely pay Creditor's attorneys fees as ordered and the State Court entered judgment in favor of Creditor as to liability and conducted a trial as to damages. (Cr.Ex. 8, which is a certified copy of the transcript of the State Court's ruling, at p. 3, l. 11-17; Debtor's Response, ¶ X. 1.)

8. Trial on the issues of causation and amount of damages was held over a period of four days and, at its conclusion on April 11, 2008, the State Court made detailed findings and conclusions, the transcript of which is some 33 pages in length. (Cr.Ex. 8, cited hereinafter as "Tr.")

9. At least through the conclusion of the four day trial to the Court, Debtor was represented by an attorney in the State Court Action. (Tr. p. 3, l. 2; See also, Cr.Ex.10, p.2: "The evidence at trial demonstrated a high degree of involvement of counsel in the actions at issue that preceded the litigation as well as simultaneous to the litigation.")

**B. The State Court's Findings and Conclusions**

10. In the course of its ruling, the State Court made very detailed findings concerning the factual bases of Creditor's claims. It also made the following findings concerning Debtor's intent or purpose in taking the actions complained of by Creditor[1]:

a. Debtor's allegations of improper conduct by Creditor that were communicated to third parties "were part of [Debtor's] malicious course of conduct aimed at injuring [Creditor]." (Tr. p. 21, l. 6-7.)

b. "Now the importance in considering the [Debtor's] mindset is the 2002 article that she produced in discovery regarding the economic devastation that is caused when professionals in these fields must respond to grievances; it appears to be part of the reason for her pursuit of grievances is her knowledge of the potential economic devastation of those grievances." (Tr. p. 22, l. 21 - p. 23, l. 1.)

c. "[Debtor] pursued a form of viral harassment of the [Creditor]." (Tr. p. 23, l. 3.)

---

[1] In her Response to Creditor's Motion for Summary Judgment, Debtor disagrees with the substance of many of the findings and conclusions that were made and orders that were entered by the State Court. It is undisputed, however, that the findings, conclusions and orders were in fact *made*, as evidenced by certified copies of the State Court's records in which the findings and orders appear. Whether these findings are preclusive in this adversary proceeding is discussed in detail below.

      d. "Simply put, the best description for the [Debtor's] conduct is machiavellian (sic)." (Tr. p.23, l. 19-20.)

      e. "[Debtor] has pursued a malicious, knowing, intentional effort to create false impressions about [Creditor]; to manufacture charges against her; to do serious injury. The motivation is to ruin [Creditor] and to do so on the basis of false information." (Tr. p. 23, l. 23 - p. 24, l. 2.)

      f. "[Debtor's] overall course of action and individual actions identified are extreme and outrageous. . . . Any reasonable member of the broader community or the specific community of professionals would consider this conduct atrocious, going beyond all possible bounds of decency and utterly intolerable in a civilized community. The course of conduct was undertaken with the intent of causing [Creditor] severe emotional distress and economic harm." (Tr. p. 28, l. 21- p. 29, l. 11.)

      g. "[Debtor's] actions were attended by circumstances of fraud, malice as well as willful and wanton conduct and I've stated repeatedly that the conduct was malicious." (Tr. p. 30, l. 5-7.)

      h. "The Court cannot avoid the finding that [Debtor] has continued behavior at issue and has repeated the actions, which are the subject of the claim and that she has done so in a willful or wanton manner during the pendency of the case." (Tr. p. 30, l. 18-21.)

      11. The State Court assessed damages on Creditor's claims as follows:

    a. Defamation (per se and per quod):
        Economic damages - $160,000
        Non-economic damages - $325,000
      (Tr. p. 26, l. 10-13.)

    b. Interference with contract:
        Economic damages - $2,800
      (Tr. p. 26, l. 16-17.)

    c. Malicious prosecution:
        Economic damages - $160,000
        Non-economic damages - $325,000
      (Tr. p. 27, l. 7-9.)

    d. Invasion of privacy:
        Economic damages - $110,000
        Non-economic damages - $275,000
      (Tr. p. 28, l. 1-3.)

    e. Interference with prospective advantage:
        Economic damages - $2,800

      (Tr. p. 28, l. 9-11.)

  f. Extreme and outrageous conduct:
      Economic damages -  $160,000
      Non-economic damages - $325,000
  (Tr. p. 29, l. 12-14.)

  g. Exemplary damages in twice the amount of actual damages:
      $970,000
  (Tr. p. 30, l. 22-24.)

### C. The Judgment

12. The judgment entered by the State Court on April 12, 2008 was "in favor of [Creditor] and against [Debtor] in the amount of $160,000 in economic damages, $325,000 in noneconomic damages and $970,000 in exemplary damages together with costs in an amount to be determined and interest at the legal rate." (Cr.Ex. 9.)

### D. Attorneys Fees Award, Costs and Interest

13. On May 7, 2008, the State Court entered an order awarding $ 71,457.75 in additional attorneys' fees to Creditor, stating that

> The Court recited in its findings following trial the scheme of harassment pursued by [Debtor] against [Creditor]. The Court finds that [Debtor's] actions in this lawsuit have been another front in that pursuit of [Creditor]. The bulk of [Debtor's] positions in this action have been pursued despite a lack of substantial justification. [Debtor] has pursued this litigation for purposes of harassment and to be vexatious. As prior rulings state, [Debtor's] actions in this case have also included discovery abuse. The Court concludes, therefore, that an award of reasonable attorneys fees is proper.

(Cr.Ex. 10, p. 2-3.)

14. In its May 7, 2008 order, the State Court also assessed costs against Debtor in the amount of $6,798.15, and prejudgment interest of $118,951.22. (Cr.Ex. 10, p. 3.)

### E. The Appeal

14. Debtor appealed from the State Court judgment, but her appeal was dismissed on October 2, 2008. (Cr.Ex. 11.)

### ANALYSIS

5

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 106 S.Ct. 1348 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288 (10th Cir. 1991). The movant bears the initial burden of establishing that summary judgment is appropriate. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000); *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256 (1986).

Collateral estoppel (issue preclusion) precludes relitigation of an issue that was litigated and decided in a previous proceeding. It is a doctrine designed to promote the fundamental policies of finality, economy, consistency, and comity in the judicial process. *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 n.6, 102 S.Ct. 1883, 1890 n.6 (1982). Generally, collateral estoppel precludes parties to a previous action from relitigating issues of fact or law actually litigated and determined by a valid and final judgment. RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982). In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654 (1991), the Supreme Court made clear that, in determining the dischargeability of a creditor's claim, a bankruptcy court may properly give collateral estoppel effect to those elements of a claim of non-dischargeability that are identical to elements which were actually determined in a prior action. 498 U.S. at 284. Collateral estoppel may be a basis for summary judgment in a dischargeability action if the debtor is precluded from relitigating all the factual elements of a creditor's nondischargeability claim because of determinations made in a prior case. In such a situation, there are no undisputed facts to litigate.

Rules for application of preclusion principles are determined by the law of the forum in which the prior judgment was rendered. *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332 (1985). Thus, a judgment is afforded the same preclusive effect in a subsequent action brought in a different forum that it would be afforded if the latter action were brought in the original forum. In this case, Colorado law governs the collateral estoppel effect of Creditor's judgment from the State Court.

Colorado law recognizes collateral estoppel as a doctrine that "is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Bebo Constr. Co. v. Mattox & O'Brien*, *P.C.,* 990 P.2d 78, 84 (1999)(internal citation omitted). Under Colorado law, the following elements must be shown in order for collateral estoppel to apply: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *McNichols v. Elk Dance*, *LLC,* 139 P.3d 660, 667 (Colo. 2006)("*Elk Dance*").

There is no question in this case that there has been a final judgment on the merits in a prior proceeding involving the same parties. In order to determine whether collateral estoppel precludes

the Debtor from relitigating the issue of whether the state court judgment represents a debt for "willful and malicious injury" under 11 U.S.C. § 523(a)(6), this Court must determine whether the remaining two factors necessary for collateral estoppel are present. In other words, was the willful and malicious nature of Debtor's conduct actually litigated and necessarily decided in the State Court Action, and did the prior case afford the Debtor a full and fair opportunity to litigate the issue?

### A. Was "Willful and Malicious" Actually Litigated and Necessarily Decided?

The first step in determining if collateral estoppel applies is to analyze whether the State Court determined factual issues using standards identical to the meaning of willful and malicious under § 523(a)(6). Under § 523(a)(6), a debtor is denied discharge from liabilities arising out of "willful and malicious injury" by the debtor to another or another's property. For a debt to become nondischargeable under § 523(a)(6), the debtor "must desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (quotation omitted). Whether the "willful and malicious injury" exception to dischargeability in § 523(a)(6) applies "turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur." *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, 2000 WL 1275614 at *3 (10th Cir. 2000) (unpublished opinion). Without proof of both willful and malicious injury, an "objection to discharge under [§ 523(a)(6)] must fail." *Moore*, 357 F.3d at 1129.

Thus, in order to collaterally estop relitigation of the § 523(a)(6) issue, the State Court must have actually litigated and necessarily adjudicated that Debtor desired to cause the consequences of her actions and the resulting injuries or that she believed that the consequences and injuries were substantially certain to result from her intentional actions. According to Colorado law, an issue is "actually litigated" if the parties raised the issue in the prior action, the issue was submitted for determination and was actually determined by the adjudicatory body. *Bebo Constr. Co.*, 990 P.2d at 85. "Necessarily adjudicated" means that the determination of an issue was necessary to the judgment. *Id.* at 86.

There is no question that the issue of the willful and malicious nature of Debtor's conduct was actually litigated in the State Court Action. Creditor's Complaint included a claim for exemplary damages based on the allegation that "[a]ll or substantially all of the actions of [Debtor] were undertaken fraudulently, maliciously, wilfully, or wantonly." (Cr.Ex. 4, ¶ 125.) The Trial Management Order also contained Creditor's claim for exemplary damages. (Cr.Ex. 7, ¶ I.A.16.) See, *Elk Dance,* 139 P.3d 660 at 668 (issue was raised and submitted for determination when it was included in trial management order). In addition, it is apparent from the State Court's lengthy and detailed findings that the issue was actually decided by the State Court. One particular finding of the State Court is especially telling: "[Debtor] has pursued a malicious, knowing, intentional effort to create false impressions about [Creditor]; to manufacture charges against her; to do serious injury. The motivation is to ruin [Creditor] and to do so on the basis of false information." (Tr. p. 23, l. 23 - p. 24, l. 2.) Debtor's "motivation to ruin" Creditor classically fits within the Supreme Court's definition that a debt is nondischargeable under § 523(a)(6) if it results from a "deliberate or

intentional *injury*." *Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998)(emphasis in original).

The findings that Debtor's conduct was intended to injure Creditor were also necessary to the ultimate judgment, because the State Court relied on its findings regarding Debtor's intent to support both the award of exemplary damages and the amount of such damages it awarded. The two separate awards of attorneys' fees that were assessed against Debtor also were dependent on the Court's findings that Debtor's conduct was part of a pattern of actions designed and intended to cause harm to Creditor. Thus, the first element for the application of collateral estoppel– that an identical issue was actually litigated and necessarily decided in the prior case– has been established.[2]

### B. Did Debtor Have a Full and Fair Opportunity to Litigate in the Prior Case?

Under Colorado law, factors to be considered in determining whether the party against whom preclusion is sought had a full and fair opportunity to litigate include: 1) whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; 2) whether the party against whom collateral estoppel is sought had sufficient

---

[2]Some of the State Court's findings are expressed in a compound or cumulative manner. For example, the Court found that Debtor's discovery abuse through her assertion of vague privilege claims was "frivolous, lacked substantial justification, and appear to the Court to have been pursued for purposes of multiplying the litigation needlessly and to obstruct and harass the [Creditor]." (Cr.Ex. 6, p. 4.) Another example is the statement that, with respect to the award of double punitive damages,"[Debtor] has continued behavior at issue and has repeated the actions, which are the subject of the claim and that she has done so in a willful or wanton manner during the pendency of the case." (Tr. p. 30, l. 18-21.) In some jurisdictions, where there are multiple alternative findings which are each independently sufficient to support a judgment, none of the findings is accorded collateral estoppel effect in a later case. This position is based on comment i. to § 27 of the Restatement (Second) of Judgments. The position that alternative findings are not entitled to collateral estoppel effect is directly contrary to the position of the First Restatement of Judgments and has been the subject of criticism by many courts. The Colorado Supreme Court has not ruled on this issue. In fact, in *Stanton v. Schultz*, 222 P.3d 303, 308 (Colo. 2010), the Colorado Supreme Court recognized the criticism of the Second Restatement rule and expressly declined to adopt it, instead affirming the Court of Appeals on a different basis. "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule." *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). In light of the Colorado Supreme Court's reluctance to adopt the Second Restatement position in *Stanton v. Schultz*, this Court predicts that it would not so restrictively interpret the "necessarily adjudicated" element of collateral estoppel in this case. This is particularly true where the underlying findings by the State Court are so detailed and so emphatic as to Debtor's intent in carrying out her scheme to injure Creditor, and where they are not unrelated alternative grounds, but rather, are a cumulative description of the extent of Debtor's misconduct.

incentive to litigate vigorously;[3] and 3) the extent to which the issues are identical. *Bebo Constr. Co.,* 990 P.2d at 87.

Analyzing these factors in the context of this case results in the conclusion that Debtor did have a full and fair opportunity to litigate her willful and malicious intent to injure in the prior case. The remedies and procedures in this adversary proceeding are virtually identical to those in the State Court Action. The potential adverse result in the State Court Action gave Debtor incentive to litigate the matter in that forum. The issues to be precluded in this case are, as discussed above, identical to issues determined by the State Court.

Debtor argues that she did not have a full and fair opportunity to litigate the nature of her conduct in the prior case because the Court entered what was essentially a default judgment against her as to liability on all of Creditor's claims. It is not disputed, however, that the judgment as to liability was entered as a sanction for Debtor's willful failure to comply with the State Court's orders regarding discovery, and that the State Court found the discovery abuse was intended to further Debtor's harassment of Creditor. Though it was unable to find a decision from the Colorado Supreme Court precisely on point, this Court predicts that the Colorado Supreme Court would follow the rule that default judgments entered as a result of a party's serious litigation misconduct do not mean that the offending party lacked a full and fair opportunity to litigate.[4] The reasoning for this conclusion is well stated in *McCart v. Jordana (In re Jordana)*, 232 B.R. 469 (10th Cir. BAP 1999). The Bankruptcy Appellate Panel upheld the bankruptcy court's application of collateral estoppel where

> the District Court's default judgment against the Debtor was no 'ordinary' default judgment. . . . The Debtor engaged in a course of misconduct designed to hinder the judicial process. Therefore, this Court holds that the bankruptcy court did not err when it held that the federal court default judgment against the Debtor collaterally estopped him from relitigating the issue of fraud. To hold to the contrary would

---

[3]It may be determined that a party does not have the same incentive to litigate in the first proceeding if its exposure to liability is substantially less than in the second proceeding. *Grynberg v. Arkansas Oklahoma Gas Corporation*, 116 P.3d 1260, 1265 (Colo.App. 2005).

[4]This Court recognizes that there has been some divergence of opinion over whether Colorado law allows preclusion to apply where issues have been determined by a "pure" default judgment, that is, a default judgment where the defendant fails to appear or otherwise participate in the litigation. Compare, *Colorado West Transportation Inc. v. McMahon*, 380 B.R. 911 (D. N.D. Ga. 2007), *Stephan v. Rocky Mountain Chocolate Factory, Inc.,* 136 F.3d 1134 (7th Cir. 1998), *Evans v. Dunston (In re Dunston),* 146 B.R. 269 (D. Colo. 1992), and *Elletson v. Riggle (In re Riggle),* 389 B.R. 167 (D. Colo. 2007). In this case, where there is no question that the issues relating to willful and malicious conduct were actually litigated in the damage phase of the case, and where the default judgment as to liability was entered as a sanction for serious obstructive conduct of the Debtor, the cases refusing to apply collateral estoppel to a default judgment entered only as a result of a defendant's nonappearance are inapposite.

9

reward the Debtor for his misconduct and encourage others to abuse the judicial system as he did.

232 B.R. at 478.

In applying Colorado law on this issue, this Court has noted the Colorado Supreme Court's recent rejection of a claim that parties who had defaulted at various stages of a prior proceeding had no full and fair opportunity to litigate. In *Elk Dance*, the Colorado Supreme Court noted that, although the parties "received the proposed trial management order notifying them of the issues to be determined in [the] case, they chose not to litigate the issue of ownership of the disputed water rights and did not appear at trial." *Elk Dance*, 139 P.3d at 669. It is no stretch to conclude that if the Colorado Supreme Court found a full and fair opportunity to litigate existed when parties made a voluntary choice not to appear at trial, it would also conclude that a party who was prevented by her own litigation misconduct from presenting a defense as to liability had an equally full and fair *opportunity* to litigate. The Court concludes, therefore, that Debtor had a full and fair opportunity to litigate in the State Court Action whether she willfully and maliciously injured Creditor.

## CONCLUSION

It is hard to imagine a better example of a case that demands the application of collateral estoppel. To relitigate the matters thoroughly tried and determined in the State Court Action, in the face of such carefully considered, detailed and unambiguous findings of fact, would unnecessarily multiply the cost and vexation of multiple lawsuits, waste judicial resources, and discourage reliance on prior adjudication. Debtor had a full and fair opportunity to present her case and to establish that her actions were not intended to injure Creditor. She failed to persuade the State Court. Comity, fairness, and common sense dictate that she not be allowed a second opportunity to relitigate these issues. Accordingly, there is no dispute as to any material fact that the following debts are for Debtor's willful and malicious injuries to Creditor:

(1) the April 3, 2008 attorneys fees award of $6,202.00, awarded as a sanction for Debtor's discovery abuse "pursued for purposes of multiplying the litigation needlessly and to obstruct and harass the [Creditor]." (Cr.Ex. 6, p. 4);

(2) the April 12, 2008 judgment for actual and exemplary damages in the amount of $1,455,000, for Debtor's "malicious, knowing, intentional effort to create false impressions about [Creditor]; to manufacture charges against her; to do serious injury [with a] motivation . . . to ruin [Creditor] and to do so on the basis of false information." (Cr.Ex.9; Tr. p. 23, l. 23 - p. 24, l. 2);

(3) costs and prejudgment interest associated with the April 11, 2008 judgment in the amount of $125,749.37. (Cr.Ex. 10, p. 3.). *See, Cohen v. de la Cruz*, 523 U.S. 213 (1998), *Suarez v. Barrett (In re Suarez)*, 400 B.R. 732 (9th Cir. BAP 2009); and

(4) the May 7, 2008 attorneys fees award in the amount of $71,457.75, based on "[Debtor's]

10

actions [which] were another front in [Debtor's] pursuit of [Creditor], . . . pursued despite a lack of substantial justification, [and] for purposes of harassment and to be vexatious." (Cr.Ex. 10, p. 1-3).

It is therefore,

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED, and it is

FURTHER ORDERED that judgment shall enter in favor of Plaintiff/Creditor Marlene Bizub and against Defendant/Debtor Elizabeth S. Paterson, declaring that the debt represented by the judgments and orders of the District Court for El Paso County Colorado, in the total amount of $1,658,409.12, is non-dischargeable pursuant to 11 U.S.C. §523(a)(6); and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is DENIED; and it is

FURTHER ORDERED that the trial scheduled to begin on May 21, 2012 at 9:00 a.m is VACATED.

DATED: May 9, 2012                                        BY THE COURT:

_____
A. Bruce Campbell,
United States Bankruptcy Judge